**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

_____

JERHAM LARE,

       Plaintiff,

                                 No. 1:22-cv-00007-WJ

    v.

SUPREME MAINTENANCE INC. and
WADE HUNT,

       Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS, DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT, AND GRANTING DEFENDANTS' MOTION TO STRIKE

**THIS MATTER** is before the Court on Defendants Supreme Maintenance Inc. and Wade Hunt's (collectively "Defendants'") Motion to Dismiss and Motion to Strike, and on Plaintiff Jerham Lare's ("Plaintiff's") Motion to Clarify, Motion for Partial Summary Judgment, and Motion to Object to Defendants' Motion to Strike. Having reviewed the parties' briefs and applicable law, the Court finds as follows: Defendants' Motion to Dismiss (**Doc. 17**) is **GRANTED** in part and **DENIED** in part; Plaintiff's Motion to Clarify (**Doc. 22**) is **DENIED**; Plaintiff's Motion for Partial Summary Judgment (**Doc. 26**) is **DENIED**; Defendants' Motion to Strike (**Doc. 31**) is **GRANTED**; and Plaintiff's Motion to Object to Defendants' Motion to Strike (**Doc. 32**) is construed as a response and **TERMINATED**.

## BACKGROUND[1]

In 2019 Plaintiff and his wife were employed as janitorial staff by Defendant Supreme Maintenance Inc. ("SMI"). Compl. ¶ 13. As part of their work for SMI, Plaintiff and his wife were assigned to clean the Concentrix Call Center. *Id.* Jamie Martinez worked as the facility services manager at Concentrix. *Id.* ¶ 22. While working at Concentrix, Plaintiff's wife was allegedly sexually harassed by Mr. Martinez. *Id.* ¶ 6. On October 28, 2019, Plaintiff's wife complained about the sexual harassment to Wade Hunt, SMI's administration director, and Gloria Sanchez, SMI's director of operations. *Id.* ¶¶ 19, 21, 41. Specifically, Plaintiff's wife complained about Mr. Martinez "asking her to go to his house for sexual favors." *Id.* ¶ 22. On or about December 10, 2019, Plaintiff's wife made an anonymous complaint to Human Resources at Concentrix about Concentrix's facility manager, Mr. Martinez, sexually harassing her. *Id.* ¶¶ 7, 35. Two days later, Mr. Martinez contacted SMI, accused Plaintiff of stealing a laptop from the Concentrix offices, and requested that neither Plaintiff nor his wife return to work at Concentrix. *Id.* ¶¶ 7, 35, 49(d). According to Plaintiff, the allegations of theft by Mr. Martinez were false because Plaintiff "cleaned the big call center areas for sam's club, united healthcare, apple and another insurance company that operated in the building" and "never had any access to any of the offices" because the offices were "assigned to the day porter." *Id.* ¶ 49(c). Moreover, Plaintiff "was never seen with any laptop"; instead, he "threw away boxes and did [his] job." *Id.* ¶ 49(d). Despite being accused of theft, no criminal charges were brought against Plaintiff for the alleged theft. *Id.* ¶ 49(c).

On December 12, 2019—after Plaintiff was accused of theft—his supervisor at SMI, Maria Vega, did not respond to his text messages or calls. *Id.* ¶ 17. The next day, Plaintiff again called

---

[1] The Background facts are from Plaintiff's Complaint (**Doc. 1**) and are taken as true and viewed in the light most favorable to Plaintiff for the purpose of Defendants' Motion to Dismiss. *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019).

Ms. Vega and also called the main SMI office, but he could not get a hold of anyone at SMI. *Id.* The SMI office was closed on December 14 and 15, 2019, because these dates fell on a weekend. *Id.* On Monday—December 16, 2019—Plaintiff's wife sent Ms. Sanchez and Ms. Vega an audio recording of the sexual harassment by Mr. Martinez. *Id.* Neither Ms. Sanchez nor Ms. Vega responded. *Id.* On December 18, 2019, Plaintiff finally reached Ms. Sanchez on the phone. *Id.* ¶ 18. Ms. Sanchez told Plaintiff that SMI would schedule a meeting to talk to Plaintiff and his wife; the meeting was scheduled for December 30, 2019. *Id.*

The meeting on December 30, 2019, was attended by Plaintiff, his wife, Ms. Sanchez, and Mr. Hunt. *Id.* ¶ 19. The meeting was audio recorded by Plaintiff's wife. *Id.* ¶¶ 7, 19. At the beginning of the meeting, Plaintiff and his wife discussed Mr. Martinez's sexual harassment of Plaintiff's wife with Ms. Sanchez and Mr. Hunt. *Id.* ¶¶ 7, 19. They also discussed the alleged laptop theft. *Id.* ¶¶ 7, 49(a). Mr. Hunt said that "he wasn't sure if [the allegations of theft] w[ere] true or not because the customer Concentrix Call Center only told them about it and he hadn't seen any proof nor did he say anyone else had seen it." *Id.* ¶ 20. Plaintiff and his wife asked Ms. Sanchez and Mr. Hunt to investigate the alleged sexual harassment and the alleged theft. *Id.* ¶ 42. However, SMI did not investigate either allegation before firing Plaintiff. *Id.* ¶¶ 7, 44. Plaintiff also asked if he and his wife could be moved to a different location, but SMI refused, claiming there were no other positions for Plaintiff and his wife. *Id.* ¶ 44.

After Plaintiff, his wife, Ms. Sanchez, and Mr. Hunt discussed the alleged sexual harassment and theft, Plaintiff was informed that his employment with SMI was terminated. *Id.* ¶ 14. Despite the discussion of alleged theft, Plaintiff was terminated for allegedly being a "no call no show" from 12/12/2019 to 12/16/2019. *Id.* ¶¶ 16, 44. But, according to Plaintiff, this reason was pretextual because he "was not scheduled from 12/12 to 12/16 and he did contact SMI Facility

Services[,] but they ignored him." *Id.* ¶ 44. Moreover, the SMI "office was closed on the weekend of 12/14 and 12/15." *Id.*

Plaintiff also claims he was paid less than Spanish-speaking employees at SMI—he was allegedly paid $9.15 per hour, while his Spanish-speaking coworkers were paid between $9.50 and $13.00 per hour. *Id.* ¶¶ 31, 50. And Plaintiff alleges SMI advertised that Spanish-speaking employees were "preferred." *Id.* ¶ 50.

Following his termination, Plaintiff filed for unemployment benefits and filed a charge with the U.S. Equal Employment Opportunity Commission ("EEOC"). At Plaintiff's unemployment benefits hearing, SMI repeated the allegation that Plaintiff had stolen a laptop from Concentrix. *Id.* ¶ 46. SMI also claimed "a supervisor 'saw' video evidence of the theft on 12/12/2019," but, according to Plaintiff, that "is not true because [in] the audio recording of the termination meeting on 12/30/2019 Wade Hunt can clearly be heard admitting that SMI was only told about the theft and he says he didn't know if it was true or not." *Id.* ¶ 48. The judge at the unemployment benefits hearing asked SMI "what indications were there to claim [Plaintiff] had a laptop." *Id.* ¶ 25. To which SMI responded that "they did not see anything to identify it as a laptop." *Id.* Ultimately, the unemployment judge ruled in Plaintiff's favor, and Plaintiff received unemployment benefits. *Id.* However, Plaintiff contends SMI did not provide the Department of Workforce Solutions with information about Plaintiff's employment with SMI from "July to December 2019 and only provided the unemployment department with the first quarter of employment which was the quarter [Plaintiff] earned the least." *Id.* ¶ 47. Based on what SMI provided to the Department, Plaintiff alleges that he received a lower benefit amount. *Id.*

Plaintiff alleges SMI also made false statements to the EEOC. *Id.* ¶ 49. According to Plaintiff, SMI accused him of theft in SMI's EEOC position statement regarding his wife's

discrimination charge but did not accuse him of theft in SMI's position statement regarding his charge. *Id.* ¶ 27. In front of the EEOC, Plaintiff also alleges that SMI was unable to provide any video evidence or documentation of the alleged theft. *Id.* ¶ 49(e). Ultimately, the EEOC issued Plaintiff a right to sue letter. *Id.* ¶ 27.

Based on these factual allegations, Plaintiff brings claims against Defendants for hostile work environment, retaliation, wrongful termination, and unequal pay under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as well as claims for unemployment fraud, defamation, and emotional distress under New Mexico law. *See* **Doc. 1** (Plaintiff's Complaint).

## DISCUSSION

### I.    Defendants' Motion to Dismiss

Defendants filed a Motion to Dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6) (**Doc. 17**). In response, Plaintiff Lare filed two documents (**Docs. 20, 22**). One of the documents is titled Plaintiff's Motion to Clarify (**Doc. 22**), and the other document is untitled but appears to be a response to Defendants' Motion to Dismiss (**Doc. 20**). The Court has considered both documents and the arguments therein to rule on Defendants' Motion to Dismiss. However, to the extent Plaintiff's Motion to Clarify requests the Court consider documents outside the pleadings, such a request is improper on a Motion to Dismiss, and Plaintiff's Motion to Clarify (**Doc. 22**) is **DENIED**.[2]

Defendants move to dismiss each count of the Complaint for the following reasons: **Counts 1 and 7** for failure to exhaust administrative remedies under Title VII; **Counts 2, 3,** and **4** for failure to allege plausible claims for wrongful termination and retaliation under Title VII; **Count**

---

[2] The Court also notes Plaintiff cannot use a Motion to Clarify to supplement allegations in his Complaint, especially since Plaintiff has not moved to amend his Complaint under Federal Rule of Civil Procedure 15.

**5** for failure to state a claim because there is no private cause of action in New Mexico for unemployment fraud; **Count 6** for failure to state a claim of defamation under New Mexico law; and **Count 8** for failure to state a claim for intentional infliction of emotional distress under New Mexico law.

The Court finds Plaintiff Lare failed to state a claim under Rule 12(b)(6) as to Counts 1, 4, 5, 7, and 8; thus, the Defendants' Motion (**Doc. 17**) is **GRANTED** as to those counts. However, the Court is not persuaded that Plaintiff failed to state a claim as to Counts 2, 3, and 6; therefore, as to those counts Defendants' Motion (**Doc. 17**) is **DENIED**.

## A.    Rule 12(b)(6) Legal Standard

Defendants moved to dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "When assessing plausibility, a plaintiff's allegations are 'read in the context of the entire complaint.'" *Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1207 (10th Cir. 2022) (citation omitted). Under Rule 12(b)(6), the Court accepts all well-pleaded factual allegations as true and construes them in the light most favorable to the plaintiff. *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019). However, the Court "will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

Plaintiff is pro se; accordingly, the Court liberally construes his Complaint and briefing. *United States v. Trent*, 884 F.3d 985, 993 (10th Cir. 2018) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (citation omitted). "Dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007) (citation omitted).

**B.**    **Counts 1 and 7 are dismissed without prejudice for failure to exhaust.**

Defendants contend the Court should dismiss Plaintiff's Counts 1 and 7 for failure to exhaust administrative remedies as required under Title VII. The Court agrees and dismisses these counts without prejudice.

"Before filing suit, a Title VII plaintiff must first exhaust administrative remedies by, among other things, filing a sufficient charge of discrimination with the EEOC." *Jones v. Needham*, 856 F.3d 1284, 1289 (10th Cir. 2017). "The purpose of administrative exhaustion is two-fold: '1) to give notice of the alleged violation to the charged party; and 2) to give the EEOC an opportunity to conciliate the claim.'" *Id.* at 1290. "[A]fter a plaintiff receives a notice of her right to sue from the EEOC, that plaintiff's claim in court 'is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC.'" *Smith v. Cheyenne Ret. Invs. L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018). The Court liberally construes EEOC charges; however, "the *charge* must contain facts concerning the discriminatory and retaliatory actions underlying each claim." *Id.* (citation omitted). If the Court finds a plaintiff failed to exhaust his administrative remedies as to one or more claims, the Court will ordinarily dismiss those claims without prejudice. *Id.* at 1166; *see also Florence v.*

*Decker*, 153 F. App'x 478, 480 (10th Cir. 2005) ("[D]ismissal without prejudice is not an extreme sanction because the remedy is simply to cure the defect and refile the complaint. To be sure, it can be an extreme sanction if the statute of limitations bars refiling.").

Defendants attached Plaintiff's EEOC charge to their Motion to Dismiss. **Doc. 17, Ex. A.** On the first page of the charge, the charge asks Plaintiff to check the appropriate box(es) that describe the alleged discrimination. Plaintiff checked the box "RETALIATION"—but did not check the box "NATIONAL ORIGIN." *Id.* And, on the second page, Plaintiff filled in the particulars of his charge:

> I was hired on or about May 16, 2019, as a Janitor for SMI Facilities assigned to the Concentrix Call Center Location.
>
> Starting on or about September 16, 2019, my spouse was subjected to unwanted sexual harassment by the Concentrix Facility Manager. Since then, my spouse and myself have been subjected to numerous complaints regarding our quality of work by the Concentrix Facility Manager to our employer. On or about October 28, 2019, my spouse notified my supervisor that we were receiving the complaints because she was subjected to unwanted sexual harassment by the Concentrix Facility Manager. On or about December 10, 2019, my spouse left a letter for the Human [Resources] Representative of Concentrix regarding having proof of the sexual harassment. In retaliation, on or about December 12, 2019, I was accused of theft and terminated on or about December 30, 2019.
>
> I believe I have been retaliated against in violation of Title VII of the Civil Rights Act of 1964 as amended.

*Id.*[3]

Defendants argue Plaintiff failed to exhaust his administrative remedies as to Counts 1 and 7. In Count 1, Plaintiff claims Defendants created a hostile work environment based on his

---

[3] The Court's consideration of Plaintiff's EEOC charge is proper at the motion-to-dismiss stage because the charge is referenced in the Complaint (Compl. ¶¶ 27, 39), is central to the exhaustion of Plaintiff's Title VII claims, and neither party disputes the authenticity of the charge. *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002) ("[T]he district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.").

national origin in violation of Title VII. Specifically, Plaintiff alleges "Defendants discriminated against Plaintiff by demoting [him] on the basis of his national origin, and paid [him] less than the 'spanish preferred' applicants." Compl. ¶ 31. In Count 7, Plaintiff brings a claim for "Unequal Pay" presumably under Title VII as well.[4] Plaintiff's unequal pay claim is also based on allegations that "SMI Facility Services advertised for 'spanish preferred' employees and the pay to be $9.50-$13.00 but [Plaintiff] was paid less than other employees who were preferred because they spoke Spanish." *Id.* ¶ 50.

Defendants argue Plaintiff's Title VII claims for discrimination based on national origin and unequal pay must be dismissed because Plaintiff failed to exhaust his administrative remedies by filing an EEOC charge as to these claims. Plaintiff disagrees. According to Plaintiff, he exhausted these claims because "in the EEOC right to sue it stated that [Plaintiff] had the right to sue over wage discrimination." **Doc. 20 at 11.** The Court is not persuaded.

The Tenth Circuit has made clear that courts must look to the charge—not the right to sue letter—to determine whether a plaintiff has exhausted his administrative remedies under Title VII. *See Smith*, 904 F.3d at 1164. Thus, Plaintiff Lare's claims in court are "limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." *Id.* Here, nothing in Plaintiff's EEOC charge suggests he intended to bring claims against SMI for discrimination based on national origin or for unequal pay relative to his Spanish-speaking coworkers. Thus, the Court finds Plaintiff failed to exhaust his administrative remedies by filing an EEOC charge as to the claims in Counts 1 and 7. The Court **GRANTS**

---

[4] Although Plaintiff does not specifically state Count 7 is brought under Title VII, the Court assumes Plaintiff intended to bring this claim under Title VII because there is no common law action for unequal pay in New Mexico and the only statutory provision referenced in the Complaint is Title VII. Moreover, in response to Defendants' Motion to Dismiss, Plaintiff does not argue his unequal pay claim is based on anything other than Title VII.

Defendants' Motion to Dismiss as to Counts 1 and 7 and **DISMISSES** these counts without prejudice to provide Plaintiff the opportunity to file a new charge with the EEOC if Plaintiff so chooses. However, Plaintiff should be aware that statute-of-limitations issues may arise out of a dismissal without prejudice.[5]

## C.    Counts 2 and 3 survive because Plaintiff plausibly alleges a retaliation claim.

In Counts 2 and 3, Plaintiff claims SMI retaliated against him in violation of Title VII.[6] Title VII prohibits retaliation against an employee for opposing any practice made unlawful by Title VII. 42 U.S.C. § 2000e-3(a). To state a claim for retaliation, Plaintiff Lare must show: "(1) [he] engaged in protected opposition to discrimination; (2) [SMI] took an adverse employment action against [him]; and (3) there exists a causal connection between the protected activity and the adverse action." *Stover v. Martinez*, 382 F.3d 1064, 1071 (10th Cir. 2004). "Sexual harassment in the workplace is a form of sex discrimination prohibited by Title VII." *Kramer v. Wasatch Cnty. Sheriff's Off.*, 743 F.3d 726, 737 (10th Cir. 2014). Protected opposition to discrimination "can range from filing formal charges to voicing informal complaints to superiors." *Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2004).

First, Defendants argue Plaintiff failed to plausibly allege the first element of retaliation— "that he engaged in protected opposition to discrimination." Defendants acknowledge the Complaint contains allegations that Plaintiff's wife reported sexual harassment; however,

---

[5] Statutes of limitations establish when an EEOC charge or Complaint must be filed based on when the alleged unlawful conduct occurred, among other considerations.

[6] Count 2 is titled "Retaliation resulting in termination"; Count 3 is titled "retaliation and false accusations against me accusations of theft of a laptop (2 days after my wife who was also an employee reported sexual harassment to the building where we worked)." Though Counts 2 and 3 are titled differently, the Court finds the allegations in each materially the same: each count boils down to a retaliation claim based on SMI allegedly firing Plaintiff because of his wife's report of sexual harassment. Accordingly, the Court will treat Count 2 and 3 as one claim.

according to Defendants, these allegations are not enough to establish that Plaintiff himself engaged in protected opposition to discrimination. **Doc. 17 at 6**. The Court agrees that Plaintiff's retaliation claim relies on his wife's report of sexual harassment; however, this does not mean Plaintiff has failed to state a claim for retaliation.

The Supreme Court has recognized third-party retaliation claims under Title VII. *See Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 175-78 (2011). In *Thompson*, the plaintiff, Thompson, and his fiancée worked for the same company. *Id.* at 172. Thompson's fiancée filed an EEOC charge alleging sex discrimination. *Id.* Three weeks later, Thompson was fired. *Id.* Thompson sued the company, alleging the company fired him in retaliation for his fiancée's EEOC charge. *Id.* The Supreme Court concluded that Thompson had stated a claim for retaliation under Title VII. *Id.* at 178. First, the Supreme Court found the company's firing of Thompson constituted unlawful retaliation under Title VII because Title VII prohibits an employer from taking an action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 174. The Supreme Court found it "obvious that a reasonable worker might be dissuaded from engaging in protected activity if she knew that her fiancée would be fired"; thus, the Court concluded firing Thompson was an unlawful act of retaliation under Title VII. *Id.* Next, the Court addressed the "more difficult question": whether Thompson could sue the company under Title VII for the alleged retaliation. *Id.* at 175. The Court allowed Thompson's claim to proceed because he qualified as a "person . . . aggrieved" under Title VII. *Id.* at 178. In so concluding, the Court rejected the argument that only employees who engaged in protected activity can sue under Title VII. *Id.* at 177. Instead of requiring that an employee have engaged in protected activity to sue under Title VII, the Supreme Court required only that an employee "fall within the zone of interest protected by Title VII." *Id.* at 178. Applying the "zone of interest" test, the Court

held that suit may be brought under Title VII "by any plaintiff with an interest 'arguably [sought] to be protected by the statute.'" *Id.* (citation omitted) (alteration in original).

Here, the facts alleged by Plaintiff Lare strongly parallel those alleged by the plaintiff in *Thompson*. Both Mr. Thompson and Mr. Lare worked with their significant other—fiancée and spouse, respectively—at the same company. Both Thompson's and Lare's significant other engaged in protected activity, and both Thompson and Lare were allegedly fired in retaliation for their significant other's protected activity. Given the strong similarities between the facts alleged in Plaintiff's Complaint and those alleged in *Thompson*, the Court has little difficulty concluding— like the Supreme Court did in *Thompson*—that Plaintiff Lare falls within the zone of interest Congress sought to protect under Title VII and accordingly alleges sufficient facts for his retaliation claim to survive Defendants' Motion to Dismiss.

Moreover, the Court is not persuaded by Defendants' assertion that Plaintiff failed to state a claim because his allegations of retaliation are "entirely conclusory" and "generic." **Doc. 17 at 6**. Plaintiff alleges sufficient facts and details about the events leading up to his termination to satisfy Rule 12(b)(6). *Cf. Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012) ("Plaintiff's general assertions of discrimination and retaliation, without any details whatsoever of events leading up to her termination, are insufficient to survive a motion to dismiss."). Further, Plaintiff is a pro se party; thus, the Court is obliged to liberally construe his pleadings and dismiss his Complaint only if "it is obvious [he] cannot prevail on the facts he has alleged." *Kay*, 500 F.3d at 1217 (citation omitted). The Court **DENIES** Defendants' Motion (**Doc. 17**) to Dismiss as to Counts 2 and 3.

**D.      Count 4 is dismissed with prejudice for failure to state a wrongful termination claim.**

In Count 4, Plaintiff claims wrongful termination under Title VII. Defendants' arguments do not distinguish Count 4 from Counts 2 and 3, and Defendants fail to acknowledge that retaliation and wrongful termination are distinct claims under Title VII. This oversight on the part of Defense counsel is noted. Nevertheless, to further judicial economy the Court holds Plaintiff's wrongful termination claim should be dismissed for failure to state a claim under Rule 12(b)(6). *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[A] court may dismiss sua sponte 'when it is "patently obvious" that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile.'").

To establish a prima facie case for wrongful termination, a plaintiff generally must show: (1) he belongs to a protected class; (2) he was qualified for his job; (3) he was discharged; and (4) the job was not eliminated after his discharge. *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 969 (10th Cir. 2017). Title VII protects against discrimination based on an employee's membership in a protected class due to an employee's race, color, religion, sex, or national origin. 28 U.S.C. § 2000e-2. Count 4 contains no allegations that Plaintiff belonged to a protected class or was terminated based on membership in a protected class.[7] Rather, Plaintiff appears to allege wrongful termination based on his wife's report of sexual harassment. Compl. ¶¶ 43-44. Plaintiff's association with his wife is not enough to state a claim for wrongful termination under Title VII. *See e.g., Tovar v. Essentia Health*, 857 F.3d 771, 775–76 (8th Cir. 2017) (holding plaintiff could not allege a discrimination claim under Title VII based on her employer's discrimination against her son based on her son's sex). Plaintiff fails to state a claim for wrongful termination under Rule

---

[7] The Court acknowledges Plaintiff alleges discrimination based on national origin in Counts 1 and 7. As discussed above, these claims are not exhausted.

12(b)(6); thus, the Court **GRANTS** Defendants' Motion to Dismiss as to Count 4 and **DISMISSES** Count 4 with prejudice.

**E.      Count 5 is dismissed with prejudice for failure to state an actionable claim.**

In Count 5, Plaintiff alleges SMI engaged in unemployment fraud by making "false accusations against [Plaintiff] to attempt to prevent [him] from unemployment benefits, [and] falsely assert[ing] that [Plaintiff] is a thief." Compl. ¶ 46. Plaintiff also alleges SMI "purposefully omitted 6 months of employment in order to lower [Plaintiff's] benefit amount and cause [him] pain and suffering." *Id.* ¶ 47. In the Complaint, Plaintiff does not identify a particular law or statutory provision SMI allegedly violated. Defendants contend Plaintiff has failed to state a claim under Rule 12(b)(6) because even if Plaintiff's allegations are true, there is no private right of action for unemployment fraud—in other words, there is no law allowing an individual, like Mr. Lare, to sue SMI for unemployment fraud. The Court agrees.

Plaintiff appears to take issue with how and in what quantity his unemployment benefits were issued based on the employment and wage information SMI provided to the Department of Workforce Solutions. Under New Mexico law, there is no private right of action for unemployment fraud. Instead, the statute specifies that civil enforcement actions shall be brought by the division and criminal enforcement actions shall be prosecuted by the district attorney. *See* NMSA 1978, § 51-1-40 (1991). In New Mexico, unemployment benefit disputes must first be raised with the Department of Workforce Solutions. *See id.* § 51-1-8 (2013) (claims for benefits procedure). Once the Department issues a final decision, the employee then may appeal the decision to a New Mexico state district court. *See* Rule 1-077 NMRA. This Court is a federal district court—not a New Mexico state district court.

The Court agrees with Defendants that New Mexico law does not provide a private cause of action under which Plaintiff can sue SMI for unemployment fraud; thus, the Court **GRANTS** Defendants' Motion to Dismiss as to Count 5 and **DISMISSES** Count 5 with prejudice.

**F.   Count 6 survives because Plaintiff plausibly alleges a defamation claim.**

In Count 6, Plaintiff brings a defamation claim against Defendants. Plaintiff's defamation claim is based on SMI's alleged false statements at both the unemployment hearing and to the EEOC that Plaintiff stole a laptop from Concentrix. Compl. ¶¶ 48, 49.

Under New Mexico law, "[g]enerally, the elements of a defamation action include: a defamatory communication, published by the defendant, to a third person, of an asserted fact, of and concerning the plaintiff, and proximately causing actual injury to the plaintiff." *Newberry v. Allied Stores, Inc.*, 1989-NMSC-024, ¶ 16, 108 N.M. 424, 429. New Mexico's jury instructions lay out each required element a plaintiff must establish to make a prima facie case of defamation:

(1) The defendant published the communication; **and**
(2) The communication contains a statement of fact; **and**
(3) The communication was concerning the plaintiff; **and**
(4) The statement of fact was false; **and**
(5) The communication was defamatory; **and**
(6) The person[s] receiving the communication understood it to be defamatory; **and**
(7) The defendant [knew that the communication was false or negligently failed to recognize that it was false] **[or]** [acted with malice]; **and**
(8) The communication caused actual injury to the plaintiff's reputation; **and**
(9) The defendant abused [its] privilege to publish the communication.

UJI 13-1002 NMRA (bold added).

Defendants contend Plaintiff failed to state a claim for defamation because Plaintiff failed to establish elements 2, 4, 5, 6, and 7, as articulated in New Mexico's defamation uniform jury instruction. The Defendants rely solely on a recitation of the elements and conclusory statements to argue against Plaintiff's defamation claim. The Court is not persuaded by Defendants' cursory arguments.

First, Defendants contend the communication at issue—i.e., SMI's statements that Plaintiff stole a laptop from Concentrix at the unemployment hearing and to the EEOC—were not statements of fact but rather merely SMI's opinion. **Doc. 17 at 8**. Under New Mexico law,

> The crucial difference between statement of fact and opinion depends upon whether ordinary persons hearing or reading the matter complained of would be likely to understand it as an expression of the speaker's or writer's opinion, or as a statement of existing fact.

*Marchiondo v. Brown*, 1982-NMSC-076, ¶ 57, 98 N.M. 394, 404 (brackets omitted). Here, Plaintiff alleges Defendants accused him of stealing a laptop at the unemployment benefit hearing and to the EEOC. Accepting Plaintiff's allegations as true, SMI's statements that Plaintiff stole a laptop from Concentrix would strike an ordinary person as statements of existing fact—not opinion.

Next, Defendants appear to argue Plaintiff failed to allege the statements were either false or defamatory. This argument is not well taken. Plaintiff has sufficiently alleged falsity: According to Plaintiff, the allegations of theft were false because Plaintiff "cleaned the big call center areas for sam's club, united healthcare, apple and another insurance company that operated in the building" and "never had any access to any of the offices" because the offices were "assigned to the day porter." Compl. ¶ 49(c). And Plaintiff "was never seen with any laptop"; rather, he "threw away boxes and did [his] job." *Id.* ¶ 49(d). Plaintiff also alleges no criminal charges were ever filed against him for the alleged theft. *Id.* ¶ 49(c).

Further, Defendants' statements that Plaintiff stole a laptop would be defamatory under New Mexico law. *See Newberry v. Allied Stores, Inc.*, 1989-NMSC-024, ¶ 16, 108 N.M. 424, 429 ("A statement is deemed to be defamatory per se, if . . . the statement imputes to plaintiff: the commission of some criminal offense involving moral turpitude; . . . unfitness to perform duties of office or employment for profit, or the want of integrity in discharge of the duties of such office

16

or employment; some falsity which prejudices plaintiff in his or her profession or trade . . . .").
Additionally, given the defamatory nature of an accusation of theft, it is hardly a question that the
judge presiding over the unemployment hearing and the EEOC would have understood the
statements to be defamatory.

Finally, Defendants contend Plaintiff failed to allege Defendants knew the statements were
false or negligently failed to recognize they were false. The Court disagrees. First, Plaintiff
plausibly alleges that prior to the accusation of theft, SMI knew Jamie Martinez, the manager at
Concentrix who accused Plaintiff of theft, had been sexually harassing Plaintiff's wife.
Specifically, the Complaint contains allegations that on October 28, 2019, Plaintiff's wife
complained that Mr. Martinez was sexually harassing her to Mr. Hunt and Ms. Sanchez. Compl.
¶¶ 19, 21, 41. Plaintiff also alleges that on 12/16/2019—before Plaintiff was fired—his wife sent
audio recordings to Ms. Sanchez documenting the sexual harassment by Mr. Martinez. *Id.* ¶¶ 17,
22, 35. Thus, Plaintiff sufficiently alleges SMI knew, in October of 2019, that Plaintiff's wife had
complained about Mr. Martinez "asking her to go to his house for sexual favors." *Id.* ¶ 22. These
allegations tend to support the reasonable inference SMI knew or should have known the allegation
of theft Mr. Martinez made against Plaintiff was false.

Plaintiff also alleges he and his wife discussed the theft and sexual harassment with
Mr. Hunt and Ms. Sanchez at the meeting on December 30, 2019, before Plaintiff was terminated.
*Id.* ¶¶ 7, 19, 49(a). At this meeting, Plaintiff asked SMI to investigate the alleged sexual harassment
and theft. *Id.* ¶ 42. However, SMI did not investigate either allegation before terminating Plaintiff's
employment. *Id.* ¶¶ 7, 44. Plaintiff also alleges that at this meeting, Mr. Hunt said "he wasn't sure
if [the allegations of theft] w[ere] true or not because the customer Concentrix Call Center only
told them about it and he hadn't seen any proof nor did he say anyone else had seen it." *Id.* ¶ 20.

Yet, later at the unemployment hearing SMI claimed "a supervisor 'saw' video evidence of the theft on 12/12/2019." *Id.* ¶ 48. Finally, Plaintiff alleges that while he was accused of theft, he was not terminated based on the alleged theft, nor were criminal charges brought against him. *Id.* ¶¶ 16, 44, 49(c). Liberally construing the Plaintiff's allegations and viewing them in the light most favorable to him, the Court finds Plaintiff alleges sufficient facts to allow the Court to draw the reasonable inference that Defendants knew their statements to the Department of Workforce Solutions and to the EEOC that Mr. Lare had stolen a laptop were false or negligently failed to recognize they were false.

Plaintiff sufficiently alleges a defamation claim under Rule 12(b)(6). Accordingly, as to Count 6, Defendants' Motion to Dismiss is **DENIED**.

**G.     Count 8 is dismissed with prejudice for failure to state a claim for emotion distress.**

In Count 8, Plaintiff brings a claim against SMI for Emotional Distress. Defendants contend Plaintiff failed to state a claim for intentional infliction of emotional distress ("IIED")[8] because the conduct alleged is not sufficiently extreme or outrageous. **Doc. 17 at 8-9**. Plaintiff responds, "The actions of the defendant[s] were intentional and did hurt my feelings and have hurt me financially." **Doc. 20 at 15**. Plaintiff also appears to argue Defendants improperly rely on their own subjective assessment of what would be emotionally distressing to Plaintiff. *Id.* ("No one can tell me what emotionally damaged me especially when the actions were intentional.").

Under New Mexico law, a Plaintiff must establish four elements for an IIED claim: "(1) the conduct in question was extreme and outrageous; (2) the conduct of the defendant was intentional or in reckless disregard of the plaintiff; (3) the plaintiff's mental distress was extreme and severe;

---

[8] The Court agrees it is appropriate to analyze Plaintiff's claim for "emotional distress" as a claim for IIED.

and (4) there is a causal connection between the defendant's conduct and the claimant's mental distress." *Baldonado v. El Paso Nat. Gas Co.*, 2008-NMSC-005, ¶ 27, 143 N.M. 288, 294 (citation omitted).

Defendants contend Plaintiff's allegations are insufficient as to the first element—whether SMI's conduct was "extreme and outrageous." The New Mexico Supreme Court has explained that for conduct to be extreme and outrageous for the purposes of IIED it must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Trujillo v. N. Rio Arriba Elec. Co-op, Inc.*, 2002-NMSC-004, ¶ 25, 131 N.M. 607, 616 (quoting Restatement (Second) of Torts § 46 cmt. D). "Extreme and outrageous" is a high standard. *See Padwa v. Hadley*, 1999-NMCA-067, ¶¶ 11, 14, 127 N.M. 416, 420. "[T]he mere fact that an actor knows that his conduct is insulting, or will deeply hurt another's feelings is insufficient to establish liability." *Id.* ¶ 11.

To determine if conduct qualifies as extreme and outrageous, the Court does not rely on its own or Defendants' subjective ideas of what conduct should qualify as extreme and outrageous; rather, the Court considers whether as a matter of New Mexico law the conduct at issue "reasonably may be regarded as so extreme and outrageous." *Trujillo*, 2002-NMSC-004, ¶ 26.

Plaintiff alleges SMI failed to investigate his wife's report of sexual harassment, failed to investigate allegations of theft against Plaintiff made by his wife's alleged harasser, fired Plaintiff based on his wife's reports of sexual harassment, and lied to both the Department of Workforce Solutions and EEOC about Plaintiff stealing a laptop.[9] According to Plaintiff, the actions taken by

---

[9] Plaintiff also alleges he experienced emotional distress based on SMI's failure to instruct his wife about the use of "chemicals that created a corrosive gas and did not provide any PPE." Compl. ¶ 52. According to the Complaint, Plaintiff's wife "experienced heart palpitations, lung damage[] from the gas . . . [and] had nerve damage in her hand." *Id.* These allegations do not state a plausible claim for IIED because the conduct at issue was not directed at the Plaintiff—but rather

SMI have caused him extreme stress and have been "hurtful" as well as "mentally and emotionally exhausting." Compl. ¶¶ 51, 54. Although the Court does not question the stress or the hurt Plaintiff has experienced, the Court concludes Plaintiff's allegations of misconduct by SMI—even liberally construed—do not rise to the level of "extreme and outrageous" conduct under New Mexico law. Accordingly, the Court finds Plaintiff failed to allege a plausible claim for IIED. Defendants' Motion (**Doc. 17**) is **GRANTED** as to Count 8; Count 8 is dismissed with prejudice.

The Court holds that Counts 2, 3, and 6 survive Defendants' Motion to Dismiss and may proceed. That said, the Court cautions Plaintiff that while he is certainly entitled to represent himself, he is at a distinct disadvantage going up against practicing attorneys. At any point in the proceedings, Plaintiff may retain counsel and have counsel enter their appearances on his behalf with the Court. Unfortunately, because of the complexity of federal law and federal procedure, proceeding pro se can be akin to showing up to a gun fight with a knife.

## II.    Plaintiff's Motion for Partial Summary Judgment

On July 14, 2022, Plaintiff filed a Motion for Partial Summary Judgment (**Doc. 26**). In his Motion, Plaintiff argues he is entitled to summary judgment under Federal Rule of Civil Procedure 56 as to his claims for defamation, wrongful termination, and sexual harassment.[10] Defendants

---

at his wife. *See Baldonado*, 2008-NMSC-005, ¶ 27 (citation omitted) ("[T]he conduct of the defendant was intentional or in reckless disregard of *the plaintiff*.") (emphasis added). And to the extent Plaintiff's allegations can be liberally understood as seeking to recover for Negligent Infliction of Emotion Distress, Plaintiff's allegations as to his wife's chemical-induced injuries still fail. *See Fernandez v. Walgreen Hastings Co.*, 1998-NMSC-039, ¶ 6, 126 N.M. 263, 266 ("NIED is an extremely narrow tort that compensates a bystander who has suffered severe emotional shock as a result of witnessing a sudden, traumatic event that causes serious injury or death to a family member.") (citation and emphasis omitted).

[10] Plaintiff's Motion requests summary judgment for his claim of "sexual harassment." However, the Complaint does not contain a claim for "sexual harassment"; thus, the Court understands Plaintiff's request as one for summary judgment on his retaliation claims.

oppose Plaintiff's Motion on the basis that it is premature. *See* **Doc. 28**. The Court disagrees that the Motion is premature but nevertheless denies Plaintiff's Motion.

Plaintiff is free to move for summary judgment under Rule 56 this early in the proceedings. *See* Fed. R. Civ. P 56(b) ("[A] party may file a motion for summary judgment at any time until 30 days after the close of all discovery."). However, while Plaintiff's Motion is not premature per se, the Court notes that the record in this case has not been developed—Defendants have not yet filed an Answer to Plaintiff's Complaint and the parties have not begun Discovery. *See Owens v. City of Oklahoma City*, 35 F.3d 574 (10th Cir. 1994) (unpublished table decision) ("[D]iscovery is 'strongly favored' before summary judgment is granted.").

Although the Court does not find Plaintiff's Motion premature, Plaintiff's Motion nevertheless fails. To properly seek summary judgment, Plaintiff must comply with the procedural requirements of Rule 56. Here, Plaintiff has failed to do so. As a threshold matter, Plaintiff has not identified "material fact[s]" over which there is "no genuine dispute," *see* Rule 56(a), nor has the Plaintiff cited to parts of the record, *see* Rule 56(c). Accordingly, Plaintiff's Motion (**Doc. 26**) is **DENIED** without prejudice. Once the record has been more fully developed, Plaintiff may refile a Motion for Summary Judgment that complies with Rule 56 if he so chooses.

### III.   Defendants' Motion to Strike

On July 19, 2022, Plaintiff Lare filed a "Notification that the Defendants are committing fraud" ("the Notification"). **Doc. 27**. In response, Defendants moved to strike the Notification as immaterial, impertinent, and scandalous. **Doc. 31**. Plaintiff then filed his own Motion to Object

to Defendants' Motion to Strike. **Doc. 32.** Defendants contend striking the Notification is proper under Federal Rules of Civil Procedure 12(f) and 11(b).[11]

Defendants contend the Notification should be stricken under Rule 11(b). The Court agrees. Rule 11 requires all pleadings, written motions, and other paper filed with the Court not be presented "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P 11(b)(1); *see also White v. Gen. Motors Corp.*, 908 F.2d 675, 683 (10th Cir. 1990) ("Rule 11 sanctions are meant to serve several purposes, including . . . streamlining court dockets and facilitating case management.").

The Notification purports to inform the Court that Defendants are committing fraud by selling their company to Clean Team Cleaning to allegedly avoid Plaintiff's lawsuit. *See* **Doc. 27**. This is not a proper purpose—nor does it request the Court take any particular action. It is improper for Plaintiff to file notifications with the Court for the sole purpose of making new accusations against Defendants. Although the Court construes pro se briefing liberally, a pro se plaintiff must follow the rules of federal civil and appellate procedure. *See Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994). If Plaintiff would like to amend his complaint to add claims of fraud, the Plaintiff may seek to do so under Federal Rule of Civil Procedure 15. But Plaintiff may not file documents with the Court that neither request the Court take a particular action nor cite a procedural rule under which such a request would be proper.

The Court finds the Plaintiff was given notice and a reasonable opportunity to respond to Defendants' Motion to Strike as required by Rule 11(c)(1). Given these procedural requirements are met, the Court finds Plaintiff's Notification (**Doc. 27**) was presented for an improper purpose

---

[11] Because the Court strikes the Notification under Rule 11(b), the Court need not address Defendants' alternative request to strike under Rule 12(f).

under Rule 11(b)(1). Accordingly, Defendants' Motion to Strike (**Doc. 31**) is **GRANTED**, Plaintiff's Notification (**Doc. 27**) is **STRICKEN**, and Plaintiff's Motion to Object to Defendants' Motion to Strike (**Doc. 32**) is construed as a response and **TERMINATED**.

**CONCLUSION**

For the reasons discussed above, Defendants' Motions to Dismiss (**Doc. 17**) is **DENIED** in part, as to Counts 2, 3, and 6, but **GRANTED** in part, as to Counts 1, 4, 5, 7, and 8—Counts 1 and 7 are dismissed without prejudice; Counts 4, 5, and 8 are dismissed with prejudice. Plaintiff's Motion to Clarify (**Doc. 22**) and Motion for Partial Summary Judgment (**Doc. 26**) are **DENIED**. Defendants' Motion to Strike (**Doc. 31**) is **GRANTED**; Plaintiff's Notification of Fraud (**Doc. 27**) is **STRICKEN**; and Plaintiff's Motion to Object to Defendants' Motion to Strike (**Doc. 32**) is construed as a response and **TERMINATED**.

**IT IS SO ORDERED.**

WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE